# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### BROWARD DIVISION

| | | |
|---|---|---|
| **RAY MOBLEY, JR.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO.:** _____ |
| **PARA'KITO USA CORPORATION**<br>**d/b/a PARA'KITO,** | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

## COMPLAINT WITH DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, Ray Mobley, Jr. (hereinafter "Plaintiff"), by and through his undersigned counsel, and hereby files this lawsuit against his former employer, Defendant, Para'Kito USA Corporation doing business as "Para'Kito" ("Defendant"), and states as follows:

## JURISDICTION AND VENUE

1. This is an action by Plaintiff, Ray Mobley, Jr., for compensatory and punitive damages, declaratory, and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), 42 U.S.C. §§ 1981, 1983 (collectively "§ 1981"), the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.* (hereinafter "FLSA")), and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10 *et. seq.* to redress injury caused by Defendant's disparate treatment based on his race and retaliation against his protected conduct. This is also an action for compensatory and punitive damages, declaratory, and injunctive relief under Title VII, § 1981, the FLSA, the FCRA, and under Florida Tort Law.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, Title VII, § 1981, the FLSA, and 28 U.S.C. § 1367. This Court has supplemental jurisdiction of the Florida Civil

SALAS LAW FIRM, P.A.

Rights Act Claims and any other state law claims pursuant to 28 U.S.C. § 1367. Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages.

3.     Defendant employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4.     Venue is proper in the Broward Division of the Southern District of Florida (Broward County (28 U.S.C. § 89(c)), because Defendant does business in Broward County, and some or all of the acts alleged herein took place in Broward County.

5.     Defendant's principal place of business is in Broward County, and one of its locations is in Broward County, 2040 NW 29th Street, Fort Lauderdale, Florida 33311 (the location where Plaintiff worked).

6.     Plaintiff currently resides in Coral Springs, Florida.

7.     All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

8.     On or about February 19, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2020-02688. A true and correct copy of Plaintiff's charge is attached hereto as Exhibit "A".

9.     On or about March 9, 2020, the EEOC issued a Notice of Right to Sue letter to Plaintiff and suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is included in Exhibit "B".

### GENERAL FACTUAL ALLEGATIONS

10.    Plaintiff is a forty-seven-year-old black male.

SALAS LAW FIRM, P.A.

11.     Plaintiff is of U.S. origin, and not of French, French-Canadian, Canadian, or Haitian origin.

12.     Plaintiff does not speak French.

13.     Plaintiff is a former employee of Defendant.

14.     Plaintiff worked for Defendant at its Oakland Park / Fort Lauderdale location.

15.     Plaintiff worked in the warehouse and was Defendants' only employee in the warehouse at the time of his termination.

16.     Plaintiff was hired by Defendant in 2016.

17.     Plaintiff worked for Defendant in the warehouse from his hire through his termination on December 18, 2019.

18.     Plaintiff was the only black person and the only person of U.S. national origin working for Defendant at its Oakland Park location at the time of his termination.

19.     All or most of the other employees at Plaintiff's work location spoke French and did so routinely amongst each other.

20.     As of 2018, Plaintiff was the only employee of Defendant working in the warehouse, as all other warehouse employees in his warehouse were terminated or had quit.

21.     Plaintiff handled all the duties of the warehouse, including order fulfillment from Defendant's Oakland Park location / its on-site warehouse.

22.     The warehouse was understaffed at all times from 2018 through Plaintiff's termination, which Defendant knew, including because Plaintiff would periodically mention it.

23.     By not hiring persons to fill the vacant positions in the warehouse, Defendant effectively forced Plaintiff to assume the duties of 1-3 former employees, depending on sales volume.

SALAS LAW FIRM, P.A.

24.    Plaintiff's supervisor at the time of his termination was Mr. Bastien Gauthier (white male of French/French-Canadian origin).

25.     In mid-2019, Plaintiff complained to Gauthier that Defendant was selling and shipping customers merchandise (mosquito repellant products (*e.g.* roll on repellant)) with expired dates.

26.    Defendant's selling of expired merchandise continued despite Plaintiff's complaint.

27.    Defendant ignored and/or did not conduct an investigation into Plaintiff's complaint.

28.    On December 16, 2019, Plaintiff complained internally to Gauthier that he had not received overtime pay for the previous week (Plaintiff worked over six hours of overtime that week).

29.    Defendant ignored and/or did not conduct an investigation into Plaintiff's complaint concerning his past-due overtime.

30.    On December 17, 2019, while Plaintiff was working and eating lunch at the same time, another employee of Defendant, Ms. Chantelli l/n/u (white female of French/French-Canadian origin), approached Plaintiff in the warehouse.

31.    Chantelli loudly demanded that she "needed an order today!"

32.    Plaintiff responded that he did not have the order invoice for the requested order.

33.    Chantelli then said loudly and/or yelling she had provided the invoice in question.

34.    Plaintiff disagreed.

35.    Plaintiff also asked Chantelli why she "was talking to [him] like that?", referring to her loud volume and abrasive nature of her request.

36.     Chantelli did not respond and walked away from Plaintiff, slamming the door to the warehouse (office and warehouse are connected) in Plaintiff's face.

37.     Plaintiff opened the door and followed Chantelli into the office saying, "this is what I'm talking about, why are you slamming the door in my face?"

38.     Chantelli did not respond, other than to go into an office and slam another door, a door in the office.

39.     Plaintiff then stated, "Why are you treating me like I'm beneath you, like I'm a slave or something?"

40.     At this point, Plaintiff went back to the warehouse and resumed his duties.

41.     Soon after, Mr. Gauthier came to the warehouse to speak with Plaintiff.

42.     Gauthier asked Plaintiff if Plaintiff had said the "slave" comment to Chantelli.

43.     Plaintiff responded, "yes."

44.     Gauthier then said "these types of things cannot go on here," referring to Plaintiff's complaint about being treated like a slave and using the word "slave."

45.     Then, Gauthier handed Plaintiff a "Final Warning" for attendance.

46.     Plaintiff had not received any discipline or write-ups for attendance since around the time of his hire in 2016.

47.     Plaintiff had been late on December 17, 2019, by around an hour; however, it was common for Defendant's employees, Plaintiff and everyone else, to be late  and to stay late and make-up any time lost.

48.     Persons outside Plaintiff's protected classes (including non-black persons of non-U.S. origin) were allowed to arrive late without discipline and/or were treated more favorably in the terms and conditions of their employment, including concerning discipline.

49. Plaintiff refused to sign the final warning presented to him by Gauthier, including because the last warning he had received for attendance was in or around 2016 and the December not be, including under Defendant's own policies and procedures, a "final" warning.

50. Bastien told Plaintiff, "if you don't sign, don't come back tomorrow."

51. Plaintiff, including because he did not agree to the characterization of it as a "final" warning, refused to sign and left for the day.

52. The next day, December 18, 2019, Plaintiff was called back to work by Gauthier to receive, according to Defendant, "severance" money and to turn in his keys.

53. Saying nothing about his internal complaints, including nothing about his complaint of overtime nor his concerns about how Chantelli had treated him ("slave" comment), Gauthier offered to change Plaintiff's termination date from December 17, 2020 and to "keep [him] on" until January 18, 2020.

54. Gauthier tied Plaintiff's continued employment to the condition that Plaintiff would "have to sign the final warning [regarding attendance from the day before]."

55. Plaintiff asked to "let me see the final warning letter."

56. Gauthier responded, agitated and loudly, saying "it's NOT let me see," its "can I PLEASE see the letter!" and demanded that Plaintiff say those exact words to him to look at it.

57. Frustrated and upset by Gauthier's statements and behavior, Plaintiff got up and walked away, saying "this is what I am talking about, how you are treating me."

58. Defendant did not have Plaintiff's final check ready at that time, so Plaintiff came back later that day.

59. Upon his return, Gauthier handed Plaintiff a one-page letter referencing a "severance," and provided him with two checks (one check for $775.74 and the other for $543.01).

SALAS LAW FIRM, P.A.

60.     Plaintiff did not sign any severance agreement (or agree to this severance) and did not understand why Defendant styled the document as "severance."

61.     Defendant's, through its agents and managers, purported reasons for its actions towards Plaintiff, are not legitimate and are, in reality, a pretext for its unlawful discrimination and retaliation.

62.     Other employees of  outside of Plaintiff's protected class, *i.e.* non-black persons, were treated more favorably than he including not being disciplined for similar issues (*e.g.* Plaintiff was disciplined with a final warning for attendance (for being 1 hour late), whereas others working at Plaintiff's location, including non-black persons working in the office, such as Chantelli (and/or Ms. Chantelle l/n/u, Ms. Ms. Barbara l/n/u, Ms. Rose l/n/u, and Mr. Harrison l/n/u), did not receive any discipline for being late and/or did not receive a "Final Warning" as their first warning (for three years).

63.     Other employees of  outside of Plaintiff's protected class, *i.e.* persons not of U.S. origin / French, were treated more favorably than he including not being disciplined for similar issues (e.g. Plaintiff was disciplined with a final warning for attendance (for being 1 hour late), whereas others working at Plaintiff's location, including non-black persons working in the office, such as Chantelli (and/or Ms. Chantelle l/n/u, Ms. Ms. Barbara l/n/u, Ms. Rose l/n/u, and Mr. Harrison l/n/u), did not receive any discipline for being late and/or did not receive a "Final Warning" as their first warning.

64.     At least Chantelli (and other similarly situated persons, Ms. Chantelle l/n/u, Ms. Ms. Barbara l/n/u, Ms. Rose l/n/u, and Mr. Harrison l/n/u) were treated more favorably than Plaintiff in the terms and conditions of their employment regarding discipline.

SALAS LAW FIRM, P.A.

65.     Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that his race was factor or a motivating factor(s) for Defendant's discriminatory and retaliatory termination.

66.     Defendant is or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that it is so liable.

### Count I – Title VII Disparate Treatment (Race) – Discipline & Termination[1]

67.     Plaintiff realleges all of the preceding paragraphs of this complaint.

68.     Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

69.     Plaintiff is a member of a protected class, a racial minority, black.

70.     Plaintiff was qualified for his position.

71.     Plaintiff suffered an adverse employment action(s), formal discipline on December 17, 2019, which resulted in more formal or further discipline, including termination of employment.

72.     Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-black persons named in the complaint, his replacement, and other non-black comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, refusing to sign a warning) not resulting in termination of employment.

---

[1] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

SALAS LAW FIRM, P.A.

73.     Defendant intended to discriminate and did discriminate on the basis of race and/or Plaintiff's protected characteristic, black, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (*e.g.* Ms. Chantelli, Ms. Chantelle l/n/u, Ms. Barbara l/n/u, Ms. Rose l/n/u, and Mr. Harrison l/n/u).

74.     Defendant's discrimination concerned one or more of the activities enumerated in Title VII.

75.     As a result of the aforementioned conduct, Defendant violated Title VII.

76.     Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

77.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

78.     Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

79.     Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

80.     As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**Count II – § 1981 Disparate Treatment (Race) – Discipline & Termination**

81.     Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

82.     Plaintiff is a member of a protected class, a racial minority, black.

83.     Plaintiff was qualified for his position.

84.     Plaintiff suffered an adverse employment action(s), formal discipline on December 17, 2019, which resulted in more formal or further discipline, including termination of employment.

85.     Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-black persons named in the complaint, his replacement, and other non-black comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, refusing to sign a warning) not resulting in termination of employment.

86.     Defendant intended to discriminate and did discriminate on the basis of race and/or Plaintiff's protected characteristic, black, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (*e.g*. Ms. Chantelli, Ms. Chantelle l/n/u, Ms. Barbara l/n/u, Ms. Rose l/n/u, and Mr. Harrison l/n/u).

87.     Defendant's discrimination concerned one or more of the activities enumerated in 42 U.S.C. § 1981.

88.     As a result of the aforementioned conduct, Defendant violated § 1981.

89.     Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

SALAS LAW FIRM, P.A.

90.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

91.     Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

92.     Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

93.     As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count III – FCRA Disparate Treatment (Race) – Discipline & Termination

94.     Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

95.     Plaintiff has completed all necessary pre-requisites to bringing his claims under the FCRA.

96.     Plaintiff is a member of a protected class, a racial minority, black.

97.     Plaintiff was qualified for his position.

98.     Plaintiff suffered an adverse employment action(s), formal discipline on December 17, 2019, which resulted in more formal or further discipline, including termination of employment.

99.     Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-black persons named in the complaint, his

11
SALAS LAW FIRM, P.A.

replacement, and other non-black comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, refusing to sign a warning) not resulting in termination of employment.

100.    Defendant intended to discriminate and did discriminate on the basis of race and/or Plaintiff's protected characteristic, black, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (*e.g.* Ms. Chantelli, Ms. Chantelle l/n/u, Ms. Barbara l/n/u, Ms. Rose l/n/u, and Mr. Harrison l/n/u).

101.    Defendant's discrimination concerned one or more of the activities enumerated in the FCRA.

102.    As a result of the aforementioned conduct, Defendant violated Title the FCRA.

103.    Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

104.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

105.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

106.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

SALAS LAW FIRM, P.A.

107.     As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

**Count IV – Title VII Disparate Treatment (National Origin) – Discipline & Termination**

108.     Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

109.     Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

110.     Plaintiff is a member of a protected class, national origin of the U.S.

111.     Plaintiff was qualified for his position.

112.     Plaintiff suffered an adverse employment action(s), formal discipline on December 17, 2019, which resulted in more formal or further discipline, including termination of employment.

113.     Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those employees of Defendant, not of U.S. origin, named in the complaint, his replacement, and other non-U.S. origin comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, refusing to sign a warning) not resulting in termination of employment.

114.     Defendant intended to discriminate and did discriminate on the basis of national origin and/or Plaintiff's protected characteristic, U.S. origin, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (*e.g.* Ms. Chantelli, Ms. Chantelle l/n/u, Ms. Barbara l/n/u, Ms. Rose l/n/u, and Mr. Harrison l/n/u).

SALAS LAW FIRM, P.A.

115.   Defendant's discrimination concerned one or more of the activities enumerated in Title VII.

116.   As a result of the aforementioned conduct, Defendant violated Title VII.

117.   Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

118.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

119.   Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

120.   Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his national origin and/or that the violations of his rights were continuing in nature by Defendant.

121.   As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count V – FCRA Disparate Treatment (National Origin) – Discipline & Termination

122.   Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

123.   Plaintiff has completed all necessary pre-requisites to bringing his claims under the FCRA.

124.   Plaintiff is a member of a protected class, national origin of the U.S.

125.   Plaintiff was qualified for his position.

SALAS LAW FIRM, P.A.

126. Plaintiff suffered an adverse employment action(s), formal discipline on December 17, 2019, which resulted in more formal or further discipline, including termination of employment.

127. Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those employees of Defendant, not of U.S. origin, named in the complaint, his replacement, and other non-U.S. origin comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, refusing to sign a warning) not resulting in termination of employment.

128. Defendant intended to discriminate and did discriminate on the basis of national origin and/or Plaintiff's protected characteristic, U.S. origin, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (*e.g.* Ms. Chantelli, Ms. Chantelle l/n/u, Ms. Barbara l/n/u, Ms. Rose l/n/u, and Mr. Harrison l/n/u).

129. Defendant's discrimination concerned one or more of the activities enumerated in the FCRA.

130. As a result of the aforementioned conduct, Defendant violated the FCRA.

131. Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

132. As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

SALAS LAW FIRM, P.A.

133.   Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

134.   Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his national origin and/or that the violations of his rights were continuing in nature by Defendant.

135.   As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VI – Title VII (Failure to Investigate)

136.   Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

137.   Plaintiff has completed all necessary pre-requisites to bring his claims under Title VII.

138.   Plaintiff engaged in statutorily protected activities, complaining on December 16, 2019 to Defendant's manager Gauthier that he did not receive his proper wages for the previous week.

139.   Plaintiff believed that his protected activity / complaint would be investigated by Defendant, including because it is Plaintiff's understanding this is the appropriate response by Defendant pursuant to its own policies.

140.   Plaintiff suffered adverse employment action(s), Defendant's: failure to investigate his complaint of failure to pay proper wages; failure to investigate whether Chantelli treated Plaintiff appropriately and/or discipline Chantelli by slamming doors; failure to investigate whether the "like a slave" comment was effectively a complaint of race discrimination rather than

SALAS LAW FIRM, P.A.

issue a "final warning" for attendance; and his discriminatory and retaliatory termination two-days later.

141.   There is or are a casual connection(s) between Plaintiff's complaint to Gauthier, and Defendant's failure to investigate as described above and its discipline the next day and the termination of Plaintiff two days later.

142.   Defendant intended to retaliate and did retaliate because Plaintiff dared to ask questions about his wages and overtime and dared to use the simile "like a slave" at work after being understaffed, yelled at, with had doors slammed in his face.

143.   Defendant has a policy or practice of retaliating against persons who speak up about EEO and/or wage and hour issues, based on the fact that Plaintiff merely using the word "slave" ostensibly invoked racial issues for Defendant and its agents, and, therefore, it was forbidden for a black person to use, especially a person who had complained the day before about overtime and wages.

144.   As a result of the aforementioned conduct, Defendant violated Title VII.

145.   Any purported legitimate reason for non-investigating and/or its handling of Plaintiff's complaints and termination are, in reality, pretext(s) for unlawful retaliatory treatment

146.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in Defendant's failure to investigate his claims (at least of failing to investigate his "like a slave" statement, and instead issued a final warning), a final warning, and his retaliatory termination.

147.   Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

SALAS LAW FIRM, P.A.

148.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

149.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count VII – Title VII Retaliation

150.    Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

151.    Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

152.    Plaintiff engaged in statutorily protected activities, complaining on December 16, 2019 that he did not receive his proper wages for the previous week to Gauthier, complaining to Chantelli on December 17, 2019 that he felt Defendant was treating him "like a slave," and complaining that same day to Gauthier that he did not want to sign the "final warning," including because there were no previous warnings (unless Gauthier meant over two-years prior).

153.    Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in December 2019 through his termination, by not starting an investigation into his internal complaint about wage and hour issues/discrimination on December 16, 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by disciplining him for attendance and treating him less favorably than others, the day after he complained about wage and hour issues and the same day he complained about Chantelli's actions, yelling, door slamming, etc., not terminating others who had complained).

154. Plaintiff believed that his protected activity / complaint would be investigated by Defendant, including because it is Plaintiff's understanding this is the appropriate response by Defendant pursuant to its own policies.

155. Plaintiff suffered adverse employment action(s), Defendant's: failure to investigate his complaint of failure to pay proper wages; failure to investigate whether Chantelli treated Plaintiff appropriately and/or discipline Chantelli by slamming doors; failure to investigate whether the "like a slave" comment was effectively a complaint of race discrimination rather than issue a "final warning" for attendance; and his discriminatory and retaliatory termination two-days later.

156. Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he complained to Gauthier, by issuing a pretextual "final warning" discipline, by not conducting an investigation into his "like a slave" complaint, and by terminating his employment.

157. There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in discipline and his termination.

158. Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

159. As a result of the aforementioned conduct, Defendant violated Title VII.

160. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

161. Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

SALAS LAW FIRM, P.A.

162. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

163. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VIII – § 1981 Retaliation

164. Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

165. Plaintiff has completed all necessary pre-requisites to bringing his claims under § 1981.

166. Plaintiff engaged in statutorily protected activities, complaining on December 16, 2019 that he did not receive his proper wages for the previous week to Gauthier, complaining to Chantelli on December 17, 2019 that he felt Defendant was treating him "like a slave," and complaining that same day to Gauthier that he did not want to sign the "final warning," including because there were no previous warnings (unless Gauthier meant over two-years prior).

167. Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in December 2019 through his termination, by not starting an investigation into his internal complaint about wage and hour issues/discrimination on December 16, 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by disciplining him for attendance and treating him less favorably than others, the day after he complained about wage and hour issues and the same day he complained about Chantelli's actions, yelling, door slamming, etc., not terminating others who had complained).

SALAS LAW FIRM, P.A.

168. Plaintiff believed that his protected activity / complaint would be investigated by Defendant, including because it is Plaintiff's understanding this is the appropriate response by Defendant pursuant to its own policies.

169. Plaintiff suffered adverse employment action(s), Defendant's: failure to investigate his complaint of failure to pay proper wages; failure to investigate whether Chantelli treated Plaintiff appropriately and/or discipline Chantelli by slamming doors; failure to investigate whether the "like a slave" comment was effectively a complaint of race discrimination rather than issue a "final warning" for attendance; and his discriminatory and retaliatory termination two-days later.

170. Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he complained to Gauthier, by issuing a pretextual "final warning" discipline, by not conducting an investigation into his "like a slave" complaint, and by terminating his employment.

171. There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in discipline and his termination.

172. Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

173. As a result of the aforementioned conduct, Defendant violated § 1981.

174. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

175. Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

SALAS LAW FIRM, P.A.

176. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

177. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count IX – FCRA Retaliation

178. Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

179. Plaintiff has completed all necessary pre-requisites to bringing his claims under § the FCRA.

180. Plaintiff engaged in statutorily protected activities, complaining on December 16, 2019 that he did not receive his proper wages for the previous week to Gauthier, complaining to Chantelli on December 17, 2019 that he felt Defendant was treating him "like a slave," and complaining that same day to Gauthier that he did not want to sign the "final warning," including because there were no previous warnings (unless Gauthier meant over two-years prior).

181. Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in December 2019 through his termination, by not starting an investigation into his internal complaint about wage and hour issues/discrimination on December 16, 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by disciplining him for attendance and treating him less favorably than others, the day after he complained about wage and hour issues and the same day he complained about Chantelli's actions, yelling, door slamming, etc., not terminating others who had complained).

SALAS LAW FIRM, P.A.

182. Plaintiff believed that his protected activity / complaint would be investigated by Defendant, including because it is Plaintiff's understanding this is the appropriate response by Defendant pursuant to its own policies.

183. Plaintiff suffered adverse employment action(s), Defendant's: failure to investigate his complaint of failure to pay proper wages; failure to investigate whether Chantelli treated Plaintiff appropriately and/or discipline Chantelli by slamming doors; failure to investigate whether the "like a slave" comment was effectively a complaint of race discrimination rather than issue a "final warning" for attendance; and his discriminatory and retaliatory termination two-days later.

184. Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he complained to Gauthier, by issuing a pretextual "final warning" discipline, by not conducting an investigation into his "like a slave" complaint, and by terminating his employment.

185. There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in discipline and his termination.

186. Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

187. As a result of the aforementioned conduct, Defendant violated the FCRA.

188. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

189. Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

SALAS LAW FIRM, P.A.

190.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

191.    As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count X – FLSA Retaliation[2]

192.    Plaintiff realleges and incorporates paragraphs 1-66 as if fully set forth herein.

193.    Defendant was Plaintiff's "employer" within the meaning of the FLSA, including obligated to comply with its anti-retaliation provision, 29 U.S.C. § 215(a)(3).

194.    At all times material to this action, Defendant was, and continues to be, an "enterprise engaged in commerce" and an enterprise engaged in the "handling, selling, or otherwise working on goods and materials that have been moved in or produced for commerce by any person" within the meaning of the FLSA.

195.    Based on information and belief, the annual gross revenue of Defendant was in excess of $500,000.00 per annum during the three years preceding the filing of this Complaint.

196.    At all times material to this action, Defendant had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, such as, vehicles, telephones, and materials used in the creation, sales, and mailings of its products across state-lines and internationally.

---

[2] Of note, presently, Plaintiff is not in possession of information or documents that would indicate a wage and hour claim and/or overtime wage claim is appropriate against Defendant; however, Plaintiff reserves the right to amend his lawsuit to add such claim(s) if necessary.

SALAS LAW FIRM, P.A.

197.    At all times material hereto, the work performed by the Plaintiff, and those similarly situated, was directly essential to the business performed by Defendant.

198.    Plaintiff engaged in statutorily protected activities, complaining on December 16, 2019 that he did not receive his proper wages for the previous week to Gauthier, a direct complaint of a violation of the FLSA, as well as complaining to Chantelli on December 17, 2019 that he felt Defendant was treating him "like a slave," and complaining that same day to Gauthier that he did not want to sign the "final warning," including because there were no previous warnings (unless Gauthier meant over two-years prior).

199.    Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in December 2019 through his termination, by not starting an investigation into his internal complaint about wage and hour issues/discrimination on December 16, 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by disciplining him for attendance and treating him less favorably than others, the day after he complained about wage and hour issues and the same day he complained about Chantelli's actions, yelling, door slamming, etc., not terminating others who had complained).

200.    Plaintiff believed that his protected activity / complaint would be investigated by Defendant, including because it is Plaintiff's understanding this is the appropriate response by Defendant pursuant to its own policies.

201.    Plaintiff suffered adverse employment action(s), Defendant's: failure to investigate his complaint of failure to pay proper wages; failure to investigate whether Chantelli treated Plaintiff appropriately and/or discipline Chantelli by slamming doors; failure to investigate whether the "like a slave" comment was effectively a complaint of race discrimination rather than

SALAS LAW FIRM, P.A.

issue a "final warning" for attendance; and his discriminatory and retaliatory termination two-days later.

202. Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he complained to Gauthier, by issuing a pretextual "final warning" discipline, by not conducting an investigation into his "like a slave" complaint, and by terminating his employment, soon after he complained about FLSA violations.

203. There is or are a casual connection(s) between Plaintiff's complaints of failing to pay proper straight time and overtime wages, and his termination.

204. Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

205. As a result of the aforementioned conduct, Defendant violated the FLSA by retaliating against Plaintiff.

206. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

207. Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

208. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

SALAS LAW FIRM, P.A.

209. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendant its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discriminatory and retaliatory practices in violation of the law, as well as appropriately fashioned equitable relief aimed at preventing future discrimination and retaliation;

(b) Award Plaintiff judgment against Defendant for compensatory damages as determined by the trier of fact;

(c) Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits he would have received absent the retaliatory treatment;

(d) Enter judgment for punitive damages against Defendant; and,

(e) Award all reasonable attorneys' fees and costs incurred in connection with this action; and any other further relief as justice may require.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 1st day of May, 2020.

//s//<u>Michael G. Green II, Esq.</u>
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: michael@jpsalaslaw.com
Fla. Bar. No. 60859

27
SALAS LAW FIRM, P.A.

//s//John P. Salas, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@jpsalaslaw.com
Fla. Bar. No. 87593

28
SALAS LAW FIRM, P.A.